Case 06-16682, Center for Public Analysis on Trade and Health v. Office of the United States Department of Commerce and the United States Department of Commerce and the United States Department of Commerce. My name is Martin Wagner. I am here representing the Appellant Center for Policy Analysis and Trade and Health et al. and I'd like to reserve two minutes for rebuttal if I may. This case concerns the application of the Federal Advisory Committee Act to six industry trade advisory committees, or ITACs, that have preferential access to decision-makers and confidential trade documents involved in the making of U.S. trade policy through the U.S. Trade Representative's Office. Before discussing the legal questions before the Court, I'd like to take one moment to describe exactly why these committees have an impact on the interests of the appellants. And I want to give two quick examples. One of the ITACs, which deals with consumer goods, ITAC 4, advocated for trade rules that would limit the ability of governments to regulate the distribution of alcohol, processed foods, and other products that affect public health. Another ITAC, ITAC 10, on services and financial industries, successfully advocated for the inclusion in a U.S. free trade agreement of a broad definition of what constitutes a service in trade that would make it more difficult for governments to assure access to health care and health insurance, precisely the kinds of regulations that governments throughout the United States are considering right now. Despite these impacts and the impacts of the other ITACs at issue here on public health, none of the U.S. Trade Representative's advisory committees includes a single representative of public health concerns. Appellants argue that this violates the Federal Advisory Committee Act's provision requiring that all U.S. Trade Representative advisory committees be, quote, fairly balanced in terms of the points of view represented and the functions to be performed by the committee. The district court dismissed this case, finding that that statute was not justiciable. And I'd like to start by addressing that claim and then move to talking about the application of the Trade Act to the Federal Advisory Committee Act. Before you get into that, tell me just exactly what CPATH did in trying to get representation and so forth. You know, right down the nitty gritty. Tell me, because it seems that we're talking about a letter, we're talking about telephone calls not being returned, et cetera, et cetera. And were they stonewalling you or what? Well, CPATH has tried to engage in an ongoing conversation with the U.S. Trade Representative's office about the need to have public health representation involved in the decision-making processes that establish U.S. trade policy. They had phone conversations. They went to Washington and met with officials and met with members of Congress as well. They sent a letter asking not only that they be represented, but if they aren't represented, that some representative of the public health concerns be on these committees. And the USTR simply has refused to do that. Well, what did they do to stonewall you? No, there's been no response. They have issued requests for nominations to the committees. The CPATH et al. have suggested members of the public health community, but there has been no appointment of a public health representative. Aren't you trying to get on this committee based on Section 2 of C, C-2? Of the Trade Act or of the Federal Advisory Committee Act? Of the Trade Act. Well, there are two pieces of the Trade Act. I understand the Trade Act. The place where you're really coming with this is under 2155 C-2. Your Honor, the Trade Act itself says that the provisions of FACA apply to all advisory committees. Well, I understand that, but I'm just trying to figure out where you're really going. Because if we go to 2155 C-2, which is, I understand, the kind of a committee you want to get on, it says that you shall represent such sectorial or functional advisory committees as may be appropriate. And then it says be representative of all industry, labor, agricultural or service interests. Where are you in that? We are not there. That provision does not apply to the concern of the Federal Advisory Committee Act about fair balance. And let me explain why that is the case. If that's the one you really want to be a part of, and you're not there, I'm having a tough time understanding how I help you. Well, the Trade Act does two things, and you're citing one of the things the Trade Act does. The Trade Act says... Refer me to the other provision. I will. The other provision of the Trade Act, well, let me back up for a second. As you suggested, there are three different kinds of committees that the U.S. Trade Representative has. Each of those kinds of committees in the Trade Act has a provision similar to the one you've cited that says here are some particular interests that Congress wants to make sure are included on those committees. I agree with that. However, in a separate provision, which is 2155F, the Trade Act says the provisions of the Federal Advisory Committee Act apply to the first-tier committee, which is not one of the ones we want to be on, and, quote, to all other advisory committees established under the Trade Act. So there are two separate obligations. And in fact, if the provision that you cited, that list of representatives, were the full definition of what Congress intended to be on the committee, there would be no reason for 2155F. 2155F becomes completely superfluous with respect to balance. Well, I guess I'm trying to figure out whether it's completely superfluous, and that's why I wanted to ask you that question. So really what you're saying is the only way you're here is because of F, and the application of F, the Federal Advisory Committee Act. That's right. All right. And as I understand it, then, what we're really talking about is fairly balanced. It's not just fairly balanced, Your Honor, if I may. It's fairly balanced. What else have you got? It's the statutory language. The statutory language is fairly balanced in terms of the points of view represented and the functions of the committee. And so your question, I assume, is, is this justiciable? Is there a standard? That's exactly where I... I'm not for standing, even. Okay. I'm not even going into standing. I'll suggest, well, anybody and their dog who wants to be a part, who can put their selves, and the one that most worries me, that's why I pointed it out to you right off the bat, not under the statute itself, but only bringing in, if I look at another act that now applies to this act, that they might have some ability to get on this committee at all. And now I'm to put into effect fairly balanced. Well, I want to reiterate that it is under the Trade Act, because the Trade Act explicitly says you look at FACA and you make sure that FACA is balanced. I understand your argument. Okay. Let me address your question about justiciability. And let me start by reminding us that the Supreme Court has said that a statute is only to be found non-justiciable in very rare instances. It's a narrow circumstance, because Congress has expected that courts will grant relief when an executive violates a command of Congress. So we have that context. And then the context said, the Supreme Court said, that statutes are not justiciable when they're drawn in such broad terms that in a given case there's no law to apply. So we need to ask, is there law to apply? Well, I think the best evidence here that there is law to apply is that most courts that have tried to do so have had no problem in doing so. We've been able to find 14 decisions in which courts have attempted to apply the fairly balanced. I guess whether they've attempted to apply or whether they've done a reasoned analysis of that is my decision to make. My worry is that I have to look at this language and determine that there's, even though those courts may want to get involved, I have to decide if that's appropriate. I don't care what other courts do. I've got to determine if that's appropriate on this standard, not because some other court does it. But I think the facts that other courts have done it and the way they've done it shows that it can be done. And the fact that of the 14 that have tried, all but four have had no problem either explicitly saying this is justiciable and here's how we will apply it, either to find the committee balanced or not balanced, or to implicitly go ahead and apply the standard and say In this situation, does the absence of any regulations using the term fairly balanced affect the justiciability? I don't think it does. You're referring to the Wenker case where there were specific regulations. The Wenker case was different because the court there, well the court did two things. The court first looked at FACA's fairly balanced language and said we find that to be justiciable. But in this case, we are looking at regulations that say fairly balanced and say some other things as well. And that was the case before the court. So it's really a different question than the case here. The case here is simply saying are these committees, does the function of these committees affect public health interests directly? And if it does, then as most courts have said, it needs to be a representation of those interests. The bottom line comes that what constitutes an appropriate or fair balance of views given that they've got four in the statute and then putting another statute on top of it, we might have more views, why isn't that a political issue? I can conceive of no principled basis for a federal court to determine which among the myriad points of view deserve representation on a particular committee. It's not, the question is not before you. You aren't being asked to decide which points of view need to be on this committee. We are not asking you, and the USTR hasn't come to you to say, we have a committee, tell us what points of view need to be on the committee. What you're being asked to decide I've got to determine, if I don't have to determine what points of view, I don't have to determine what the situation is, then it seems to me, again, this is a political question. Best resolved by the political representative who's choosing the committee rather than getting the court involved in doing it and saying, well, you didn't do it the way I thought so, so it's wrong. Well, let me be more specific. First of all, the Congress did say the courts, the presumption under the Supreme Court's jurisprudence is the Congress said the courts Congress didn't say it. The Supreme Court in another decision suggested that there may be an interest in doing that. And I'm looking at this specific situation and what Congress set out, because I'm not anxious to second-guess Congress. Well, what Congress set out was that the courts are going to be asked to look at whether there is fair balance with respect to the points of view represented and the functions of the committee. And the courts They say the courts will. Congress. They didn't say that at all. As I said If it were in the act, I'd have no trouble working on it. Okay. The Supreme Court said it. You're right. But but what you're being asked and what the court below is being asked was not to decide what points of view should be on the committee. The question is, is without a public health point of view, is the committee imbalanced? And that's a very narrow question, given all the things they've got to consider. I don't think so, because because what Congress said, and we can see this if we look at the congressional intent behind the statute as well, Congress said that what they were concerned about was that the federal government was getting advice from committees that were imbalanced, that were focused on industry interests and weren't representing the public interest in any way. And so what Congress said, and using exactly an example that is exactly analogous to the situation before us, when there is an advisory committee on an issue of it happened to be hazardous wastes there and the only people advising the federal government are industry representatives, that is imbalanced. And that's precisely what this fair balance provision is intended to to address. And so what I think Congress was saying was that question will become come before the courts in that situation where a committee is addressing hazardous wastes and there is not a representative of the public interest or environmental interest, then that FACA will define that as you're obviously a very sharp guy. But my worry is that we're going the same place that the court in the Fertilizer Institute said. For me to become entangled in determining what represents a fair balance would require me to arbitrarily substitute my judgment for that of the agency. I think I don't know how I get around that if I have nothing more than fair balance to look at. Well, remember, you have more than fair balance. You have two specific guidances with respect to the kind of balance you're looking at. Well, if I take the statute itself and what's in the very statute, not what's analyzed in the statute by looking at F and trying to apply it in regard to another statute, I wouldn't let you in at all. Well, except you're none of those groups. Unless I go over into FACA, you wouldn't even get in. But then you're making again, I'm saying to myself, what guidance do I have for making this determination? If you do that, if you ignore F, then you're ignoring a very explicit directive of Congress where Congress said, yes, you should include these people and you should make sure there's fair balance with respect to points of view and the function of the committee. And in fact, I think your concern about the agency having a role here is completely accurate. The agency does have a role. I think it's instructive to look at what Judge Edwards of the District of Columbia Circuit did. What he said is in those situations, there are situations where a court will defer to a judgment of an agency about how to go about achieving the requisite balance. But that doesn't mean there's no standard for a court. It simply affects how the court is going to look at a particular case. So so in a case like this, and I in this case suggest that, though, I would not necessarily undo what the court has done. I will just do it in a different way. I will say, OK, yeah, there's an issue. But since I can affirm this on any decision, I suggest I'll defer to the agency and you're out anyway. Well, under administrative law, you can't defer to an agency that has made no attempt to comply with the statute being they've selected the committee, but they have not made no explanation of why the public health interests either. They have two things they can do. They can either explain that the committee doesn't take action that affects public health. That would be a decision. And then the court would have a basis for reviewing that. Or they can decide that public health interests are being represented. But if that's what you're going to argue, then why shouldn't I throw you out for jurisdiction? Why shouldn't you exhaust that stuff before you ever come to me? We have we have exhausted that. First of all, if you've been exhausted and the and the trade representatives have made you've exhausted that claim to the top and now you're here, then I can defer. But but you but you would have to defer to something. And the agency has not done the agency has simply said, here's our committee. It does not include they haven't said it does not include public health. Here's our committee. Fact is, it does not include public health. And there's no explanation of the committee not addressing public health issues or of why public health is being represented by some of the you. You want us to tell them you've got to have public health people on here. Get get cracking. No, I think what all you need to do is you need to say, first of all, FACA's fair balance requirement does apply to the to the industry trade advisory committees. I don't think we have any problem doing that because it's in the statute. That's right. Our problem is, is that justiciable? So therefore, you you need to ask the district court to determine, first, do those committees address public health? And second, is there is that interest represented? And if it's not, it's a very simple question. It goes to the U.S. trade representatives to ensure that that interest is represented. Now, the U.S. trade representative has lots of alternatives for doing that. The charters of these committees allow for up to 50 people on each committee. Half of the committees have less than 18 people on them. Now, the largest has 33. They have plenty of room for adding one representative. And in fact, right now, they have many representatives of the same interest. They have, for example, on one committee, there are four representatives of tableware and cookware. So so there's clearly the U.S. trade representative has much room for deciding how to go about balancing the relevant interests. And and that's where I think for you, your honor, that the you're exactly right. The agency does have a role to play here and it has to play that role. That's what Congress is saying. I guess my worry is and you've answered my question, if I should get involved in that role or if it's just a political question you're asking me to take on. Well, I hope I've answered from my perspective. Let me let me make two more quick points about the Trade Act. Going back to the Trade Act, the the Trade Act makes very clear that the mandate of these committees is very broad. In some of the cases, the courts have looked at the balance piece that has to do with the function of the committee and has said where a committee is very where its tasks are narrowly defined. It can have a limited number or limited kind of interest represented and it is balanced. So, for example, in the national anti-hunger case, when it went to the district court, the committee had been created to provide advice to the government about how to manage agencies and how to contain costs. And it had industry business representatives. And the district court said because it has that narrow technical function, it is balanced. The Court of Appeals agreed that it was balanced, but said, however, if the committee goes further and takes action that affects broad issues of general public policy, it might not be balanced. When it went back to the district court, the plaintiffs presented evidence that the committee had begun to make recommendations that the government cut food stamps. Well, then the district court was able to say very clearly there is a task of the committee that is affecting broader interests than just this narrow technical mandate. And so it needs to have representatives of consumer interests. In the Trade Act, it defines the role of the advisory committees very broadly to include things like that the committees are supposed to make recommendations about important developments in any area of trade for which there should be developed a proper policy response. That's a broad mandate. Thank you, Your Honors. May it please the Court. Mark Stern from the Department of Justice for the Appellees. To begin where counsel left off in terms of why Congress created these third-tier committees, some of the legislative history that's relevant is quoted at page 15 of our brief from the Senate committee, which explains that these third-tier committees were supposed to be, quote, representative of the producing sectors of our economy, unquote. Their purpose was, quote, to strengthen the hand of U.S. negotiators by improving their knowledge and familiarity with the foreign markets, unquote. And it was because of that purpose that Congress defined the composition of the committees in the way that it did. Now, as Your Honor suggests, various courts in looking at the FACA and its intersection with various regulations, statutes, and so forth have, in determining what's fairly balanced, have employed a number of rubrics from non-justiciable to being deferential and so forth. No court faced with anything remotely resembling this kind of a situation has ever suggested that there would be a role for the court in actually issuing a directive. And the reason is fairly plain. When Congress talks about why it's created something and that there is a purpose and we know what the purpose of this committee is, then to, as the district court recognized, there's no basis at this point for going, well, I know that this is a committee that's designed to give input from the producing sectors to strengthen the hand of trade negotiators. Now, there are many people and groups in this world with very valid, legitimate concerns about the various things that are trade negotiators themselves, after receiving this and many other pieces of advice, may then go out and do. And among them are persons interested in the public health. That's a very important, legitimate concern. But there is no basis for determining which among all of those groups should be included. It can't be because one group comes up first that they've got a right to be on. There's no way for a court to determine which of all the many other groups should be on that committee. And there's nothing in the purpose of that committee that suggests that any of them should be on. So what the district court said is, look, I'm looking at this particular case, this particular request that says on these particular six committees, I've got to have these representatives. No, there is no legal basis for even getting that. Why we've got letters, we've got telephone calls, we've got personal discussions, apparently, between staff in both of these arenas. Why isn't there a decision? Or why isn't there an indication here by trade to tell them why they're being rejected as a member of what is supposed to be a fairly balanced advisory group? Well, again, Your Honor, I mean, these aren't the subject for administrative decisions in the same way, you know, as a lot of more formal actions. I mean, anyone can ask. There are many, many advisory groups. There are many people who can ask to be on them. Those don't generate formal administrative proceedings. I think there have been a lot of communications. What plaintiff is saying is, I don't know why I'm not on there. I mean, it's very clear that what the agency has done is to appoint representatives in accordance with the dictates of the Trade Act. And no one is suggesting that that hasn't been done. And what the agency has said, I don't know to what extent this is reflected in all the various pre-litigation conversations, but we've certainly been making it clear in court for a long time, and the district court certainly understood this, that the agency has put on representatives in accordance with the kinds of to get the information that Congress indicated that these third sector committees that were designed to reflect producing interest to strengthen the hand of trade negotiators. Why would there be an indication or a statement by the agency as to why a particular applicant is rejected? Well, I mean, there may be, you know, I'd have to go back and see if there are any letters in here, but the, I mean, this is, I mean, it is clear, I mean, we've been saying this now in the litigation for a long time, and I don't think that the plaintiff doesn't understand this. What the plaintiff says is, I want you to explain, I mean, the court asked plaintiff this question, and the plaintiff doesn't simply want us to send a letter back that says all the things that we've just said in these briefs as a matter of formality. What the why public health interests aren't affected, or if they are affected, you know, what are you doing about it? That would give us something to review. If the agency would say, no, you're not, it's not that significant in the act, or your group is not representative or whatever, but it seems to me that there should be some kind of a response indicating why somebody is or is not included. Your Honor, again, I can look to see what exactly there is by way of letters, but what we've been saying in district court in here is the agency's response. I mean, it is the position. There are a lot of people who can apply for advisory committee positions. There's never been a notion that there has to be the kind of reviewable administrative decision every time someone applies for one of those. Like, for example, here, I don't know if there's anything in the record, how many applicants have there been? Your Honor, the point is not whether or not the question is, is there ultimately a judicial role? What could happen? No, that's not my question. My question is, is there any indication in the record as to how many applicants there have been? I'm not aware of any, Your Honor. But the question would be, if the answer turned out to be 22 or 48, it ultimately doesn't make any difference, because the court still has no basis for saying, well, you've only had 24 applicants. It looks like you have open positions. I demand that you put one of them on or tell me why. Because it is ‑‑ I'm not saying demand to put anybody on. I just am saying it would seem a reasonable thing if a group believes that they should be on it and they make some sort of a formal request with the agency, the agency ought to say why they are or are not on it. But, Your Honor, Plano understands why they're not on it. It's not ‑‑ there's nothing mysterious about the position here. It's not like there are a lot of other public health groups that are getting on and the agency simply hasn't ‑‑ Wagner says they don't care who's on it. Well, that's right. People from the public health sector. That's right. And it is very clear why none have been put on. Well, why is it so clear? Excuse me, Your Honor? Why is it so clear? It is very clear because we have been saying it in the district court and before this court that the appointments have been made in accordance with the categories that were specified by Congress and with a view to that type of concern, that purpose of that committee, and no court has ever suggested that when you're looking at a committee that has a certain purpose that all possible interests in the world need be looked to. I mean, even in the cases which have said that there's court of appeals cases that have said that there's just disability that then gone on to say, but in this case it's not a problem. For instance, in the Cargill case from the Fifth Circuit. But here the executive branch is explicitly directed by Congress to follow the fairly balanced guideline, and shouldn't there be a presumption in favor of a judicial review? No, but what does fairly balanced mean is the question. And that's exactly the point. Fairly balanced is not an easy question. Okay, it's also the point that brings this case to the courts. Now, look what we did in ADA. We're told by broad policy by Congress that they don't define what disability is, and they don't define what reasonable access is, and they leave it up to the courts. So we've had 12 years, 15 years, of ad hoc decision-making, case by case by case. Now we've pretty well cleaned up the whole area and done it on a case-by-case basis. Your Honor, no one doubts that most cases that that is the way that the law is made. I totally agree with you. The point here is fairly balanced is not an abstract. It is questionable whether the suggestion of plaintiff, the fact that the Trade Act cross-references the FACA, the FACA has many requirements. The reference to the FACA does not merely refer to the fairly balanced requirement. Most of the FACA requirements are indisputably subject to judicial enforcement. The courts have divided over whether the balanced requirement is enforceable at all, and even when the courts have suggested that it is enforceable, they have been very wary about getting involved for the very reasons that the district court cited here, which is we can go, why not have this group? Well, because if we have this group, why not 30 others? And even the courts that have looked at it, for example, in the Fifth Circuit's cargo case, they said, well, we can review this, but you know, this is a scientific peer-to-peer review question. I don't need representatives from the coal industry here in anti-hunger. Why can't the agency respond to that? When there's a request like here, why can't the agency say public health doesn't have that much of an interest in it, or we've got too many people in the committee, or whatever? But if rather than do that, just say it's nonjudiciable, we're not going to say anything, because the courts shouldn't be involved, why not say what it is that the agency is deciding as to whether to include this group or not? I mean, it's unclear to me whether it's a question of courtesy or it can't be because we don't understand what the agency's position is. And all the cases that have come up in this way, I mean, including D.C. Circuit's decision in anti-hunger, where the only court that was ever before the D.C. Circuit, Judge Edwards, than whom there is nobody, sort of more vigorous in asserting the justiciability of the fairly balanced requirement, and there Judge Edwards said, well, okay, the issue here is the efficiency of the various aid programs like food stamps, so even though it consists entirely of industry representatives, I'm not getting involved. The district court did something unremitting, the case went away, the D.C. Circuit never saw that part again. But that was Judge Edwards, who was the most fervent advocate in the D.C. Circuit or anywhere else in terms of justiciability. Well, I don't know how one could get too much from Judge Edwards, Your Honor. And his position, which has not commanded the general assent of the D.C. Circuit, but even Judge Edwards said that. The Fifth Circuit said, well, it's justiciable, says yes, but look, that's a scientific inquiry. What we have here is this is a means for a third tier trade committee with a specific purpose to get representatives from the producing sectors for this purpose. And you go, well, lots of people, and then the jump is made to, yes, but the trade negotiators who then negotiate the treaties go out and their work ultimately affects all kinds of people, including people with public health interests, so they have to be involved. By that reasoning, everybody with legitimate interests gets involved. So it's a general policy level and is designed to have a much broader level of inclusiveness. I mean, this is really the sort of plainest instance in which there, however you look at it in terms of justiciability, in terms of just applying what Congress intended in a common sense way or whatever, that in this one, we really know that the agency just went out and did what Congress thought it would do, and it makes a lot of sense. And the district court really got this one exactly right. So under your view, we would leave it entirely up to the agency. If they want to exclude or not, or not a particular group, whatever the agency decides, that's it, whether it's rational or whether any reason is given for it or not. Well, Your Honor, I think as a general matter, that would be true. In this case, for example, if the agency was not complying with, like, for example, some Congress said, I want to see at least these people from these sectors, and the agency said, well, I'm not going to do that, well, that's a different case. In the Ten Circuits Colorado case, it was a question of regulations, and the court said, look, here, I've got normally, I don't, this might be somewhat harder for me, but here there are regulations, and the court specifically says in this circumstance, and this is a 353, a third, a 1233, the court says, but here the regulations tell me exactly what interest should be represented, good, and you fail to do that, so the court looks to the regs and says the regs determined it, but here we're not even talking about the agency's regulations, we're talking about what Congress did. I mean, this is a much more compelling circumstance in terms of looking for guidance about what constitutes fairly balanced in light of a committee's charge, and the question is not whether fairly balanced has been trumped. The agency says, look, Congress said it's up to us. We don't want to have this group included at all, and I don't care about fair and balanced or not, this is what we're going to do. Would that be judicially reviewable? If they're declining to follow the guidelines set out by Congress in terms of who should be on it, that might be judicially reviewable. That would be a case that would be the equivalent of the Colorado case. But that's not what we have. There's no suggestion that the agency has failed to do that. The question is, well, does it have to do something more, and is that something more judicially reviewable? What did they do here in this case? Well, what they did was to appoint persons in accordance with the guidelines set out by Congress in terms of the sectors. With regard to the public health people, what did they do? There are none, but they aren't among the groups. I mean, Congress has said, I want to see do the producing sectors, look at these people, I want to see representatives from these areas. Nobody suggests that the agency didn't do that. And our point is, either whether you look at it as just disability or if you look at it in terms of what fairly balanced means in this context, what fairly balanced in terms of the task of the committee means is this committee is supposed to be getting input from the producing sectors for a very specific purpose. And Congress has given content to the term fairly balanced in this context. So, however, whether you think of it as reviewable or not reviewable, it comes out the same way here. The agency is doing what Congress wanted to do in light of the purpose of this committee, which would be all that the FACA could require. And so there's no question of a conflict between the two statutes. They harmonize exactly, and the agency did what it was supposed to do. No further questions? Thank you very much. This case is submitted. Did you have some extra time? All right. Sorry. I thought you used it all. I didn't get a yellow light. You got a red light and you had extra 16 seconds, so I gave you some extra time. Unless my colleagues want you to have extra. Yeah, I'd like to hear a little bit. Yes. All right. I'll give you another minute. Well, I want to make just a couple of points. USTR says the ITAC is intended to perform only a narrow function and that that defines balance. Well, that's not what FACA says. FACA says it has to do with what the committee does, not with what the committee is intended to do. And that's because we're supposed to be protecting the government from getting unbiased, from getting biased advice. And Congress did explicitly make clear that the fair balance provision applies here, because it said FACA applies to these committees except for a couple of provisions of FACA about access to records and access to meetings, but it did not accept the fair balance provision. So it did intend the fair balance provision to apply directly. And finally, the district court recognized that this list of people who ought to be on the committees is a minimum list. It's a list of people that Congress recognized should be included if we're going to get this kind of advice. But by making FACA's fair balance explicitly applicable in addition to this list, Congress was also saying we want to make sure the agency doesn't get inaccurate, biased advice. And in fact, the USTR has appointed people who are not on this list to other committees. It's appointed environmentalists to other committees, for example. So it has the capacity. Thank you, Your Honors. The case CR 0616682 is hereby submitted. The case 0616937 was voluntarily dismissed. So our calendar is adjourned.
judges: Hug, Smith, Mills